THE SHIP MARCELLUS—*Baxter, Claimant; Camp, Libellant.*

1 In a case of collision between two sea-going vessels, where the only question proposed by the pleadings is one of fact, where there is much discrepancy between the witnesses as to every averment, and where both the courts below have concurred in their decision, it is not to be expected that this court will reverse the decree upon a mere doubt founded on the number or credibility of the witnesses.

2 In such a case the appellant has all presumptions against him, and the burden of proof is thrown on him to show affirmatively that an error has been committed, and if there be sufficient evidence on the record to support the decree which *was* made, the appellant cannot get it reversed by establishing a theory, supported by some of the witnesses, on which a different decree *might* have been rendered.

Appeal from the Circuit Court of the United States for the district of Massachusetts. In admiralty.

Hugh N. Camp, Edward W. Brunsen, and Charles Sherry, partners, doing business in New York city, under the firm of Camp, Brunsen & Sherry, filed their libel in the District Court for Massachusetts, against the ship Marcellus, of Boston, her tackle, apparel and furniture, alleging that they were the owners of one hundred and seventy boxes and forty hogsheads of sugar, worth ten thousand dollars, laden on board the schooner Empire, bound from Boston to Bristol, Rhode Island; that while the schooner, with the sugar on board, was sailing out of Boston harbor, in the narrows between Gallup and Lovell's islands, the ship Marcellus carelessly and negligently ran afoul of her, striking her on her larboard side, nearly amidships, so that she sunk and the sugars were totally destroyed and lost. The circumstances of the collision are minutely set forth in

the libel—the condition of the schooner, the vigilance of her officers and crew, the relative position and course of the two vessels, the state of the wind, the hail from the ship to the schooner, and the reply of the schooner, &c.; from all which the conclusion is stated that the schooner did everything that she could or ought have done to avoid the collision and save the cargo, and that the loss was caused solely by the culpable misconduct of the ship.

The proper process being issued, and the ship arrested, John A. Baxter, one of the owners, for himself and the other owners, namely, William Dillamay and Charles H. Dillamay, of Boston, Josiah Gorham, Alexander Baxter, Sylvester Baker, jr., James B. Crocker, and John Gorham, of Yarmouth, Sylvester Baxter, Asa Lathrop, Owen Bearse, Robert B. Hallet, and Thacher Hinchley, of Barnstable, came and claimed the ship, and she was delivered on the usual stipulations being given.

The answer of the claimants admitted that a collision did take place between the two vessels at the time and place set forth in the libel, but denied, circumstantially and specifically, all the material allegations of the libel which tended to show that it was caused by the fault of the ship. The answer averred that the injury to the schooner was caused entirely by her own fault and negligence; that she was badly and unskilfully navigated; that she might easily have avoided the ship with proper care and effort, and ought to have done so; and that the ship was well and carefully navigated, but on account of the schooner's mismanagement it was impossible for the ship to go clear of her.

The witnesses were very numerous on both sides. The lists were composed of the officers, seamen, and others on board of the ship and the schooner, and of persons who saw the collision from other vessels which were in sight at the time; and in their testimony there was much conflict and contradiction.

The District Court decreed that the libellants recover against the ship Marcellus, her tackle, apparel, and furniture, $9,654 57, with costs. From this decree the libellants took an appeal to the Circuit Court, where the cause was elaborately reviewed

and the evidence thoroughly analyzed by Mr. Justice *Clifford*, who affirmed the decree of the District Court, adding to it the interest which had accrued in the mean time. The libellants then took their appeal to this court. The arguments here were very full, but consisted mainly of discussions on the matters of fact, each party contending that his own view of the case was supported by the preponderating weight of the evidence.

*Mr. Russell*, of Massachusetts, for the claimants.

*Mr. B. R. Curtis*, of Massachusetts, for the libellants.

Mr. Justice GRIER. The collision, which is the subject of inquiry in this suit, took place in the narrows, in Boston harbor, between Lovell's island and Gallup island.

The libellants are owners of the schooner Empire, and the appellants of the ship Marcellus. The schooner was going out, the ship coming into Boston harbor. They were sailing in opposite courses, through a channel of about three hundred and sixty feet.

The libellants charge in their libel, that the collision was wholly attributable to the carelessness and negligence of those in the ship. They allege that the wind, just before and at the time of the collision, was south-southwest; that the schooner was sailing on the western side of the channel, close-hauled on the wind, with her starboard tacks aboard, and with all or nearly all her sails set; that she was steering southeast by south, working up to the wind, in order to give the ship as much room as possible; that the ship was sailing up the channel at great speed and with the wind free, so that she might have passed the schooner on the larboard side without difficulty; that as the ship approached towards the point of danger, the schooner hailed her to keep off; that the hail was answered from the ship, requiring the schooner to luff, which was impossible, as she was already close to the wind; that the schooner did not change her course, but that the ship, immediately after she hailed the schooner, luffed, and instantly ran into the schooner, and presently both vessels drifted to the leeward shore.

*The Ship Marcellus.*

In their answer, the respondents admit that the collision occurred at the time specified in the libel, and that the ship was running free on her larboard tack; but allege that the collision took place on the easterly side of the channel, and that every possible precaution was taken by the ship, by hailing and otherwise, to prevent the vessels from coming in contact. Their theory is, that it was occasioned entirely through the fault and mismanagement of those in charge of the schooner, and accordingly allege that the wind at the time of the collision was southwest; that the ship between six and seven o'clock was sailing along the leeward edge of the channel, hugging the shore as close as it was possible for her to do with safety; that while so passing, the schooner was discovered some distance ahead coming down the harbor with a free wind, and appearing at first to be going to the windward of the ship, as she should and might easily have done, but that she afterward: changed her course as if going to the leeward, and when she had approached within a short distance of the ship, luffed across her bows, resulting in a violent collision, sinking the schooner and damaging the hull, rigging, and spars of the ship, for which they pray they may be allowed.

The only question proposed by these pleadings is one of fact. In this, as in all other cases of the kind, there is great discrepancy and conflict in the testimony of the witnesses, as to every averment in the pleadings. We have had occasion to remark more than once, that, when both courts below have concurred in the decision of questions of fact under such circumstances, parties ought not to expect this court to reverse such a decree, merely by raising a doubt founded on the number or credibility of witnesses. The appellant in such case has all presumptions against him, and the burthen of proof cast on him to prove affirmatively some mistake made by the judge below, in the law or in the evidence. It will not do to show that on one theory, supported by some witnesses, a different decree might have been rendered, provided there be sufficient evidence to be found on the record to establish the one that was rendered.

When the wind is southwest, it is the general rule that ves-

sels going out shall keep to the windward side of the channel, and the vessels coming in the leeward. The witnesses, who could know best, testify, that throughout the passage down the narrows the schooner was kept close to the wind, and was not suffered to fall off, and did not luff at all. Others may have formed erroneous judgments. But if their testimony be untrue, they must have wilfully perverted the truth. It is a common mistake to attribute the motion of one of two passing bodies to the other. Calculations of time and distance, resting on the loose recollections of witnesses, can seldom be relied upon with much confidence. The collision took place in the evening, when it was not quite dark. The testimony of three of the ship's crew concurs with that of witnesses on the schooner, in establishing the state of facts as alleged in the libel.

The pilot of the ship had observed the approach of the schooner, and directed the mate to go forward and see how she was standing. He did so; and observing that the schooner was heading to windward of the ship, he responded to the order: "all right, she is going to windward;" but in a short time was heard to say: "luff, hard-down, hard-down, luff," which were the first words heard by the man at the wheel; the pilot repeated the words, "hard-down, luff." The wheel was let down, or nearly so, when the order was changed to "hard-up;" but before this last order could have any effect, the collision took place.

Another of the ship's crew gives a similar account, with some difference: that the mate of the ship called out to the schooner "to luff;" and repeating the command to them, "you must luff, heave her hard-down." During this colloquy, the ship luffed, as the witness supposed, in consequence of the pilot having made the mistake, of supposing the mate's order "to luff" was directed to him.

The collision was attributed by some on the ship to the fact, that the mate *"bothered"* the pilot. This testimony, on the part of the crew of the ship, corroborates that of the officers and crew of the schooner. Without any further attempt to vindicate the correctness of the decree, by a minute comparison of the testimony, it is sufficient to say, that the weight of

the testimony is on the side of the charges in the libel, and supports the decree of the court below, which is therefore affirmed.