## THE "RICHMOND."

1. Where in a case in admiralty the decree below, determining the liability of the respective vessels in a collision, was rendered before the act of Feb. 16, 1875, c. 77 (18 Stat., pt. 3, p. 315), took effect, this court, the case being properly here on appeal, will re-examine the evidence, and, if the appellant does not show that in the concurring action of the courts below error was committed to his prejudice, the decree will be affirmed.

2. Where, after such a decree, and the taking effect of that act, the ascer-tainment of the amount of damages sustained by the vessel not in fault was referred to a master, the action of the Circuit Court upon exceptions to his report, all of which relate to questions of fact, will not be reviewed here.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

This was a libel filed by Shirley and others, owners of the steamboat "Sabine." They allege, in substance, that between two and three o'clock of the morning of Feb. 11, 1872, while she was descending the Mississippi River about twelve miles above New Orleans, the steamer "Richmond" ran into and sunk her; that the collision was owing entirely to the gross and culpable negligence of the officers and pilot of the "Rich-mond;" and that the libellants suffered damages to the sum of $37,500.

The owners of the "Richmond" filed an answer and cross-libel, claiming $12,000 damages.

The Merchants' Mutual Insurance Company filed its libel against the "Richmond" and the "Sabine," alleging that it

had insured the cargo of the "Sabine," and paid a large sum on the policy, and that both vessels were at fault.

Other intervenors appeared and filed their respective libels.

The suits were consolidated. The District Court dismissed the libel April 14, 1873. An appeal was prayed for and allowed to the Circuit Court, which adjudged and decreed, April 19, 1875, that the libel of the "Sabine" be dismissed with costs; that the "Richmond" recover of the "Sabine" all damages the "Richmond" suffered by the collision; that the libel of the Merchants' Mutual Insurance Company against the "Sabine" and the "Richmond" be dismissed as to the "Richmond;" and that said company and intervenors have judgment against N. C. Selby, master of the steamer "Sabine," for all damages sustained by the company by reason of said collision, with privilege on any balance of the proceeds in the registry arising from the sale of the "Sabine."

It was further ordered that it be referred to J. W. Gurley, United States commissioner, to ascertain and report the damage sustained by the "Richmond," the Merchants' Mutual Insurance Company, and the intervenors. He reported, June 4, 1875, that the "Richmond" had sustained damages in the sum of $7,392.60. He subsequently filed a report of the losses of the Merchants' Mutual Insurance Company and of the various insurance companies, subrogees of the individual intervenors.

The court, March 11, 1876, confirmed the report and condemned the sureties on the bond of the "Sabine" to pay the amount for which they respectively bound themselves. The owners of the "Sabine" and the various insurance companies prayed an appeal from the decrees of the Circuit Court.

The insurance companies who claimed to be subrogated to the rights of the individual intervenors filed no new pleadings.

*Mr. Bentinck Egan, Mr. R. H. Marr,* and *Mr. Charles B. Singleton* for the appellants.

*Mr. Given Campbell, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is an appeal from a decree in admiralty which was

entered before the act of Feb. 16, 1875, c. 77, went into effect; consequently the whole case comes up. On examination we find that, so far as the merits are concerned, the questions involved are of fact only. Two courts have already found against the appellants. Under such circumstances the burden is on the appellants to show the error, with every presumption in favor of the decrees below. *The S. B. Wheeler*, 20 Wall. 385. The testimony is voluminous and conflicting, but it certainly makes no such clear case in favor of the appellants as will justify us in reversing the decrees against them.

The decree of the Circuit Court will be consequently affirmed, and as it will serve no useful purpose to enter into a discussion of the evidence in detail, no further opinion will be delivered. Having reached this conclusion, it is unnecessary to consider how much of the case has been brought here by the appeals that were taken.

*Decree affirmed.*

A petition for rehearing having been filed, MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

We are asked to rehear this case on two grounds: 1, because on the evidence the decree below should have been reversed; and, 2, because the exceptions to the commissioner's report were not considered.

Notwithstanding what has been said in the briefs filed with this application, we still think the question of the liability of the "Richmond" is one of fact only. She was not a carrier of the "Sabine's" cargo, and consequently not liable in any respect as such. If not at fault for the collision, she is no more liable for damages to the cargo of the "Sabine" than she is for the damages to the "Sabine," on which the cargo was carried.

So far as the "Sabine" or her cargo, therefore, is concerned, the only question presented on this application is whether, in law, the Richmond was in fault for the collision, and that depends on the fact whether the "Sabine" had "fled to the wall," and for that purpose had gone closer to the left-hand shore than her pilot had ever seen a boat before, and the "Richmond" followed her. On that question of fact the case hinges, for if

the "Richmond" did what is thus claimed against her, the law clearly charges her with fault. As to the fact the testimony is voluminous and conflicting. Two courts have already, on the same testimony, decided against the "Sabine" and the insurers of her cargo. As long ago as 1861 we said, speaking through Mr. Justice Grier, in the case of *The Ship Marcellus*, 1 Black, 414: "We have had occasion to remark more than once that when both courts below have concurred in the decision of questions of fact, . . . parties ought not to expect this court to reverse such a decree by raising a doubt founded on the number or credibility of witnesses. The appellant in such a case has all presumptions against him, and the burden is cast on him to prove affirmatively some mistake made by the judge below in the law or in the evidence. It will not do to show that on one theory, supported by some witnesses, a different decree might have been rendered, provided there be sufficient evidence to be found on the record to establish the one that was rendered." This rule, thus stated from the preceding cases, was uniformly followed afterwards until the act of Feb. 16, 1875, c. 77 (18 Stat., pt. 3, p. 315), which took effect on the first day of the following May, relieved us from the labor of weighing evidence. *Newell* v. *Norton and Ship*, 3 Wall. 257; *The Hypodame*, 6 id. 216; *The S. B. Wheeler*, 20 id. 385; *The Lady Pike*, 21 id. 1. It is true that, notwithstanding this rule, we were required "to re-examine the facts as well as the law of the case" (*The Baltimore*, 8 id. 377); but we did not reverse except in a clear case. Such was the well established rule of decision.

The decree on the merits was rendered April 19, 1875, a few days before the act of 1875 took effect. We were, therefore, as we thought at the hearing, compelled to consider and weigh the evidence on the question involved when *that* decree was rendered. We are clear now, as we were on the first hearing, that the presumptions in favor of the correctness of the two decrees below have not been overcome. If one set of witnesses are to be believed, the decree is right; if the other, it is wrong. There is, to say the least, no such preponderance in favor of the appellants as to justify us in overruling the decisions of the two courts below.

As to the exceptions to the report of the commissioner. It was presented June 4, 1875, after the law of 1875 went into effect. The exceptions were filed the next day. All the exceptions that were argued in the court below or here relate only to questions of fact, depending on the weight of evidence. The court omitted to find the facts, and the case comes here on the evidence. This, since the act of 1875, we are not bound to consider. If the appellants had desired to press their exceptions, they should have got a finding of the facts, so as to present questions of law alone. The case on its merits came up under the old law, and we were compelled to consider the testimony, but on the master's report the act of 1875 was applicable, and our review is confined to questions of law.

*Petition denied.*