## THE A. P. CRANMER.

(*Circuit Court, E. D. New York.* August 12, 1881.)

1. COLLISION—STEAM-VESSEL—SAIL-VESSEL—REV. ST. § 4233.

> In an action by the owner of a canal-boat, which was one of seventeen comprising the tow of two tugs, to recover damages for an injury to his boat received in a collision with a schooner, whose apparent course, as seen by the tugs, was such, up to within so short a time of the collision that it could not be prevented, as to cause them no reasonable apprehension of a collision, but whose apparent course was affected greatly by the leeway which she was making, of which her master was aware, but not those on the tugs, *held*, that the effect of the leeway on the legal relations of the tugs and tow to the schooner was the same, so far as the rights of one cognizant of the fact were concerned, as that of a direct change of course. *Held, further,* that when the apparent course of a sail-vessel, as seen by a steam-vessel, is such as to cause the latter no reasonable apprehension of a collision, it is not incumbent on such steam-vessel, under section 4233 of the Revised Statutes, to take precautions to keep out of the way.

In Admiralty.

*H. T. Wing*, for libellant.

*R. D. Benedict*, for the schooner.

*T. A. Wilcox*, for the tugs.

BLATCHFORD, C. J. In this case the district court found the facts to be as follows:

On the twenty-fourth of July, 1877, the schooner A. P. Cranmer and the canal-boat John A. Heister came in collision in the bay of New York, and the canal-boat was sunk. At the time of the collision the schooner was sailing down the bay upon the starboard tack, and was between Bedlow's island and the Can buoy on Robbins' reef. The canal-boat was the outside boat on the port side of the head tier of a tow of 17 canal-boats then being towed from Amboy to New York by two steam-tugs, the W. C. Nichols and the Sammie. The tugs were towing one ahead of the other, the Nichols being the leading boat, and were pulling the tow at the speed of about two and a half miles an hour. It was a clear day. A working breeze was blowing and no other vessels were moving in the vicinity. The schooner passed the two tugs in safety, to the westward. Just about as she passed the Sammie, in order to avoid running into the canal-boats, she hove her wheel down, but, as she swung, one of the towing hawsers caught under her tuck and threw her off from the wind again, so that she ran head on into the libellant's boat, causing her to sink instantly. These facts are shown by the evidence.

The district court found the canal-boat and the tugs to be free from fault, and the schooner to be in fault. It held that if the canal-boats and the tugs together were to be deemed a single vessel, within the sailing rules, such combined vessel could not be deemed a steam-vessel under steam, within rule 20 of the steering and sailing rules in section 4233 of the Revised Statutes, and so required to keep out of the way of the schooner; that the provisions of

rule 20 could not be supposed to be intended to apply to a combined mass of 17 canal-boats and two tugs, because, in such a tow, because of the hampering of the steam-vessel, there existed no considerable part of the power to control its own movements possessed by a steam-vessel when steaming alone, the possession of that power being the foundation of the rule which requires a steam-vessel to keep out of the way of a sailing vessel; and that the test of responsibility in the present case was to be found in the ability possessed by the respective vessels to control their own movements and avoid collision. Acting on this principle, the court held that the schooner could, without any considerable difficulty, have placed herself sufficiently far to the westward of the tow to avoid all danger of collision, while the ability of the mass of boats composing the tow, moving slowly in the tide, and compelled to keep in position to take effective action to avoid the schooner, was very small; that the fault of the schooner was in omitting to put her helm down until she was too close to the canal-boats; that after the danger of collision was apparent, nothing could have been done by the tugs to prevent the collision; and that the schooner, when she saw herself in danger of running into the canal-boats, could, without serious inconvenience, have moved further to the westward, and so have avoided the collision. The libellant has appealed because the tugs were not condemned, and the claimants of the schooner have appealed because she was condemned.

For the schooner it is contended that the tugs were bound to keep the tow out of the way of the schooner. By rule 23 of the same rules in section 4233, it is provided that where, by rule 20, one of two vessels is bound to keep out of the way, the other must keep her course. Rule 20, by its terms, applies only when the steam vessel and the sail vessel are proceeding in such directions as to involve risk of collision. As the steam vessel is bound to keep out of the way of the sail vessel, she can regulate her movements to do so only by what appears to her to be the course of the sail vessel. When the apparent direction of the sail vessel, as seen by the steam vessel, is such that, if their respective courses are kept, no risk of collision is or ought reasonably to be apparent to the steam vessel, it is not incumbent on her to take precautions to keep out of the way, other than not to do anything to bring on risk of collision, growing out of the respective directions of the two vessels, as the course of the steam vessel is known to herself, and as the apparent course of the sail vessel is seen by the steam vessel. The testimony clearly shows that the tugs and their tow, after coming out of the Kills, and getting in their course up the bay, did not make any change of course towards the schooner. Whatever change they made was away from the course of the schooner, and the distance between them and the schooner when the last change of course of any kind on their part was made, was so great as to cause no embarrassment to the schooner. On the

other hand, the master of the schooner, not seeing the tugs and the tow to the windward of him, or on his starboard bow, paid no attention to them, although he had before seen them. They were to the leeward of him, and the wind was, he says, all the while heading him off; that is, the wind was getting more to the southward, and he was all the while starboarding and falling off, so as to hold the wind, so that, as he says, he finally got on a course which was parallel to the course of the tugs and their tow. But the difficulty after that was that the schooner was all the time making very great leeway, more than the tugs had any reason to understand she would make, judging from the direction of her heading. Encumbered as they were with their tow, they could not make a change of direction and location as readily as a steam vessel not so encumbered. This fact was apparent to the schooner, or should have been, and the actual leeway of the schooner was a matter she well knew or was bound to know.

For all practical purposes, the effect of the leeway, in regard to the legal relations of the tugs and the tow to the schooner, was the same as a direct change of course of the schooner towards the tugs and tow. But the master of the schooner paid no heed to the leeway approach of the schooner towards the tugs and tow, and no lookout on his vessel warned him of it. It was very easy for him to have luffed up into the wind and held the schooner there at a sufficient distance off to have gone safely by the tugs and tow. Although the stem of the schooner may never have pointed in a direction nearer to the course of the tugs and tow than a line parallel thereto, she was all the while bearing down on that course sideways, so that if she had not finally ported at all she would have come broadside against their mast. The tugs had no reason to apprehend danger from the schooner until it was too late for them, with the mass and length of their tow, to do anything to avoid the collision. The tugs did all they were bound to do to keep themselves out of the way of the schooner, as her course, existing and probable, reasonably appeared to them. On the other hand, the actual movement of the schooner with respect to the tugs and tow was faulty, and caused the collision. The risk of danger from such actual movement, while it ought to have been plainly apparent all the time to those on the schooner, was not a risk that could have been seen on board of the tugs sooner than it was. They had a right to assume that the schooner would take note of their position, and not move down heedlessly and blindly upon them. When finally the tugs saw that there was danger of collision, it does not appear that they could have done anything to prevent it. In

view of such fault on the part of the schooner, it is incumbent on her to make out by clear proof that the tugs could have done something after they saw, or ought to have seen, the danger of collision to prevent it. On all the evidence, including that taken in this court, this has not been made out.

It was no fault in the tugs that they did not whistle to the schooner at any time. They saw no risk of collision, and there was none which they ought to have seen. They were not intending to go, and did not go, to the westward. There was plenty of room for the schooner to go by them to the westward. They could have no idea that the schooner would chase the wind as she did, and would make the leeway she did. The tugs stopped as soon as it was incumbent on them to do so, and were not guilty of any fault in stopping.

There must be a decree against the schooner for $2,775, with interest from April 9, 1880, and the costs of the libellant in the district court, taxed there at $236.50, and the costs of the libellant in this court, to be taxed. The libel must be dismissed as against each of the tugs, with costs to the claimants of the Nichols in the district court, taxed there at $178.87, and to them in this court, to be taxed; and with costs to the claimants of the Sammie in the district court, taxed there at $73.27, and costs to them in this court, to be taxed.