# THE COLUMBIAN.

## (Circuit Court of Appeals, First Circuit. April 12, 1900.)

### No. 302.

1. COLLISION—SAILING RULES—CHANGE OF COURSE.

A variation of half a point in a sailing vessel closehauled or hove to,—in which case she is regarded the same as a vessel under way and closehauled,—does not constitute a change of course, within the rule requiring a privileged vessel to maintain her course.

2. SAME—STEAMER AND SAILING VESSEL.

The fact that a schooner had no one at the helm, which was lashed, or that she was insufficiently manned, cannot be held a fault contributing to a collision with a steamship in a fog at night, when in any event it would have been her duty to keep her course, and she did this.

3. REVIEW—APPEAL—QUESTION OF FACT.

The circuit court of appeals is not bound by a finding of fact made by the court below in an admiralty case, but it is its duty, under the statute

giving the right of appeal, to determine such question in accordance with the convictions formed from the record by the judges sitting on the appeal.

4. COLLISION—STEAMER AND SAILING VESSEL—CONTRIBUTORY FAULT.

The rule applied that where a steamer was confessedly and grossly in fault for a collision with a schooner, by reason of her excessive speed in a fog at a place where she had reason to apprehend danger, any doubts as to fault in the schooner contributing to her injury will be resolved in her favor.

Aldrich, District Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts.

Benjamin Thompson, for appellants.

Lewis S. Dabney and Frederic Cunningham, for appellee.

Before PUTNAM, Circuit Judge, and WEBB and ALDRICH, District Judges.

PUTNAM, Circuit Judge. This is a case of collision between the ocean steamer Columbian, of 8,050 gross tons, on a voyage from London to Boston, and the fishing schooner Ella M. Doughty, of about 71 tons. The collision occurred in a fog on the La Have banks shortly before midnight on August 30, 1898. The steamer had slowed down somewhat after entering the fog, but she was running between 9 and 10 knots. When she heard the horn from the schooner she stopped her engines, but she did not reverse until she saw the schooner's white light. She was an overtaking vessel, coming up on the starboard quarter of the schooner. Both vessels were found in fault by the district court. 91 Fed. 801. The steamer was clearly in fault for excessive speed. Indeed, considering the known frequenting of the locality, her speed was without due regard for human life. This is none the less true because the frequent condemnation by the courts of excessive speed in fogs has not yet broken up what is described in The Umbria, 166 U. S. 404, 409, 17 Sup. Ct. 610, 612, 41 L. Ed. 1053, 1057, as a "custom" which "implies a flagrant disregard of the safety of other vessels."

The respects in which the schooner is alleged to have been at fault, as maintained at bar, are: She had no helmsman; her wheel was lashed; she had no torch or flare-up light; she had no proper stern light; she gave improper fog signals; she constantly changed her course; she might have avoided the steamer; she had no proper lookout; her helm should have been freed on hearing the steamer; and her deck was insufficiently manned. The first, second, sixth, seventh, ninth, and tenth faults thus alleged resolve themselves into one, substantially to the effect that the schooner's wheel was lashed in the becket, and that nothing was done to control her movements. She was hove to, as she had a right to be by immemorial usage on the ocean. Her only change of course claimed at bar was a variation of a half point or a quarter. A change of course of a half point in a vessel closehauled is unavoidable, and is not a fault. Mars. Mar. Coll. (4th Ed.) 478; The Emily B. Maxwell, 37 C. C. A. 658, 96 Fed. 999, decided by the circuit court of appeals for the Sixth circuit, and authorities there cited. The same rule necessarily applies to

a vessel hove to, especially as she is ordinarily regarded as a vessel under way. Mars. Mar. Coll. (4th Ed.) 405. In the case at bar the schooner was undoubtedly, for the purposes of the law, a vessel under way and closehauled; and there is no evidence in the record justifying the inference that she could have kept her course more steadily than she did, if all the matters complained of in this connection had been as the Columbian maintained they should have been.

Before leaving this topic it is well to call attention to The Iroquois, 33 C. C. A. 435, 91 Fed. 173, 176, decided by the circuit court of appeals for the Second circuit, illustrating how broad is the rule which we apply here,—that the yawing of a vessel closehauled, within the limits which we have stated, does not charge her with not holding her course. In The Iroquois it was claimed that a sailing vessel, closehauled, must be held in fault because she did not overcome her leeway. It is well known that the leeway is frequently equal to a full point. The court observed that it had not been referred to any authority which requires a privileged vessel to persist in difficult maneuvers for the purpose of overcoming the ordinary leeway. The principle of this observation is in the same line with the other authorities which we have cited, and with the settled practices of the admiralty law. all of which require us to hold that the proofs show no change of course on the part of the Ella M. Doughty for which she could be held responsible.

The Columbian, however, undertakes to make the first, second, seventh, ninth, and tenth faults, as alleged at bar, do double duty. In other words, she complains, not only that the Ella M. Doughty changed her course, but also that she was in fault in having no wheelman, in having her wheel lashed, and in not having her decks fully manned, so that she could not avoid the steamer, which it is alleged she might have done. If she had undertaken to avoid the steamer, she might have been subject to the observations in The Delaware, 161 U. S. 459, 469, 16 Sup. Ct. 576, 40 L. Ed. 771, where the court intensifies, in an illustrative way, the duty of a privileged vessel to keep a steady hand. If the Ella M. Doughty had changed her course, she would prima facie have violated the statutory rules, and, under the decisions of the supreme court, she would have been required to show, not merely that such violation was probably not one of the causes of the collision, but that it could not have been. The Providence (C. C. A.) 98 Fed. 133, 134. On the other hand, the alleged faults now under consideration do not relate to a statutory rule. They concern only the ordinary rules of navigation, as to which, it must appear, not only that there were faults, but that they did in fact contribute to the collision. The Nacoochee, 137 U. S. 330, 340, 341, 11 Sup. Ct. 122, 34 L. Ed. 687, well illustrates this, in a case which is strikingly analogous to the facts at bar with reference to this topic. In the case at bar, even if the schooner's helm had been freed, and she had had a helmsman, and her deck had been manned to the satisfaction of the Columbian, nothing would have come therefrom, because the schooner would not have been justified in availing herself of all these things for

100 F.—63

the only purpose for which she could have availed herself of them under the circumstances; that is, making a change of course.

The Umbria, 166 U. S. 404, 17 Sup. Ct. 610, 41 L. Ed. 1053, already referred to, cuts under this whole group of alleged faults. The Umbria was about 12 miles out of New York Bay, running through an intermittent fog at a speed of from 16 to 19 knots, and came into collision with another steamer, the Iberia. The Iberia, after hearing the whistles of the Umbria, although unable to see her, changed her course for the intended purpose of giving her more room; and the court, as appears at page 410, 166 U. S., page 613, 17 Sup. Ct., and page 1058, 41 L. Ed., thought it would have been more prudent on the part of the Iberia not to have changed. Nevertheless the opinion said at page 420, 166 U. S., page 617, 17 Sup. Ct., and page 1062, 41 L. Ed.:

"In this case it is manifest that no precautions on the part of the Iberia would have been of the slightest avail, in view of the extraordinary speed of the Umbria. It is true that, if she had stopped promptly, she might not have reached the point where the courses of the two steamers intersected; but it is equally true that, if she had been going at a much greater speed than she was, she would have passed the point of intersection before the Umbria reached it."

The result was, as appears at page 421, 166 U. S., page 617, 17 Sup. Ct., and page 1062, 41 L. Ed., that, notwithstanding the change of course on the part of the Iberia, the majority of the court held that she was not in fault, while others rested their conclusion relieving her on the view that, even if she was in fault, such fault did not contribute to the collision. Indeed, this class of considerations is disposed of by a single practical question: With this large ocean steamer coming up on her quarter out of a fog at midnight, at an admitted speed of 9 knots, what could this schooner have done, except to keep steady, as she did, and to await her fate, desperate as it might have been? Like the Iberia, she was in extremis from the moment she heard the steamer with which she collided approaching at an undue rate of speed; and again, like the Iberia, whatever she might have attempted might, for aught she could foresee, have proved to have been the very thing she ought not to have done.

The eighth fault alleged at bar against the Ella M. Doughty was that she had no proper lookout; but, as the Columbian came up on the starboard quarter, it is impossible to maintain seriously that this, if true, was one of the contributing causes of the collision. The third and fourth alleged faults,—that she had no torch or flare-up light, and that she had no proper stern light,—under the international rules now in force, run together into a single proposition. Under article 10, she had her option to show over her stern a fixed white light or a flare-up light, and she elected the former. It is true that the light was not screened according to the letter of the statute, because it was visible over 16 points of the compass, instead of 12; but it was visible aft, and visible to the Columbian as she overtook the schooner, so it is not possible that this could have contributed to the collision. Comment is made as to the height above the deck at which the Doughty carried her light, but there is

no reason for holding that this contributed to the collision, and, in view of the indefinite phraseology of the statute in this particular, it is impossible for us to say that it was not complied with. There is no evidence that the light had not the power which article 10 requires. So far as this alleged fault is concerned, the Columbian fails to maintain her case.

The main question with reference to the liability of the Ella M. Doughty to share the damage caused by the collision is raised by the fifth alleged fault, to the effect that she gave improper fog signals. Under the present international rules, as she was on the port tack, she should have given two blasts of her horn in succession; but five witnesses from the steamer testify that they heard only one blast, although they heard this given twice. This would indicate that she was on the starboard tack; and, being on this tack, and on the port bow of the Columbian, the course of the vessel was such that that tack would have taken her clear of the steamer. The captain of the Columbian testified that, as he heard but one blast, he did not change his course. Probably he would have been justified in this if the schooner had given but a single blast; and, however this may have been, if in fact she gave only a single blast, this would have been a violation of a statutory rule, which it would be impossible to determine did not contribute to the collision, so that unavoidably she would have been held in fault.

As we have already said, five witnesses aboard the steamer testify that they heard single blasts. Among these is a passenger, who may be supposed to be disinterested; but his circumstances were in fact such, as they naturally would be at midnight, that no special weight can be given to his testimony on a question of this character. As against these witnesses, the schooner produces three. Their testimony is not particularly criticised, except that it is apparent that it did not commend itself to the learned judge who sat in the district court; and it is also apparent that there was a certain amount of inattention on the part of her lookout, who was also blowing the horn. This inattention might be fatal to the schooner if the question were whether the horn was blown at all, but that it was blown, and that it was heard aboard the steamer, are admitted. Therefore we are to weigh the case on the single question whether or not, it being admitted that the horn was blown, it was blown with the number of blasts required.

On this proposition the Columbian insists that, as the question is one of weighing conflicting evidence, the finding of the court below must be treated by this court as unassailable. The case on which she mainly relies is Davis v. Schwartz, 155 U. S. 631, 636, 15 Sup. Ct. 237, 39 L. Ed. 289, which related to the report of a master in chancery. A full consideration of the opinion will show that it is to be qualified according to the peculiar circumstances of the case. It appears at page 637, 155 U. S., page 239, 15 Sup. Ct., and page 293, 39 L. Ed., that the reference to the master was a special one, so that the case falls within the principle of Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764. A statement nearer to the rule on which the Columbian seeks to rely in this particular

will be found in Warren v. Keep, 155 U. S. 265, 267, 15 Sup. Ct. 83, 39 L. Ed. 144; but the last statement, and one which must now be accepted as correct, is in Towson v. Moore, 173 U. S. 17, 24, 19 Sup. Ct. 332, 335, 43 L. Ed. 597, 601, where it is said:

"A series of decisions of this court has established the rule that successive and concurrent decisions of two courts in the same case, upon a mere question of fact, are not to be reversed unless clearly shown to be erroneous."

This rule has been applied, as in Warren v. Keep, to findings by a master or commissioner which have been affirmed by the court; this being regarded as the equivalent of "successive and concurrent decisions of two courts in the same case." The rule, in this view of it, was applied by us in The Providence (C. C. A.) 98 Fed. 133, 135, already referred to. Even as thus applied, it is justly subject to the observations of Mr. Justice Swayne, speaking for the court, in The Ariadne, 13 Wall. 475, 479, 20 L. Ed. 542, 543, as follows:

"We are not unmindful that both the circuit and district courts came to a conclusion different from ours as to the alleged fault of the steamer. Their judgments are entitled to, and have received, our most respectful consideration. Their concurrence raises a presumption, prima facie, that they are correct. Mere doubts should not be permitted to disturb them. But the presumption referred to may be rebutted. The right of appeal to this court is a substantial right, and not a shadow. It involves examination, thought, and judgment. Where our convictions are clear, and differ from those of the learned judges below, we may not abdicate the performance of the duty which the law imposes upon us by declining to give our own judicial effect."

The rule stated in Towson v. Moore, which contemplates two concurrent decisions below, cannot apply in terms to an appeal from the district court to this court, where there has been no finding by a master or commissioner; and it has never been so applied by us, except in some peculiar cases, where it was apparent that it was impossible to say that a finding contrary to that of the district court was the more likely to be correct. On the other hand, it sometimes happens that the judge of the first instance receives misleading impressions with reference to the weight to be given the testimony; and it also sometimes happens that a court which has a printed record, and thus can easily balance one portion of the proofs against another, derives advantages superior to any which the instance judge can derive from a personal inspection of the witnesses. However this may be, the practice in this circuit, subject to the peculiar cases which we have stated, has been to secure what the statute establishing this court intended to secure,—not only a prompt hearing, but a retrial of the case in accordance with the convictions formed from the record by the judges sitting on appeal. Davis Electrical Works v. Edison Electric Light Co., 8 C. C. A. 615, 60 Fed. 276, 277.

Returning now to the specific proofs, it is to be borne in mind that there are some cases of this character which can be met by the fact that, by reason of "the vagaries of sound in a fog," apparently inconsistent testimony can be disposed of on the conclusion that the evidence from both vessels may be true, in that, while proper signals were made by one, they were not transmitted correctly to the other. Mars. Mar. Coll. (4th Ed.) 40, 41. Several cases bearing on this

proposition are cited at bar, but they need not be further referred to by us, because we think this appeal can be disposed of without resorting to any problematical explanation of that character.

It is true that in a case of collision the want of discipline found to exist aboard either vessel creates a presumption against proofs coming from her officers and crew, when the evidence is closely balanced. This has been said in this court several times, and it is a just rule, by which sometimes the court is much aided in weighing conflicting proofs. This rule, however, can hardly be applied so far as to outweigh the testimony of the crew of the Doughty, under the peculiar circumstances of this case. It is testified by the master of the Columbian that he heard the horn of the schooner at least twice before the collision, and each time a single blast. At the time the first one was given there were, as already stated, only two men on the deck of the schooner; but when the second was given the captain had come on deck, and he had heard the horn blowing while he was below. He had followed the sea for over 20 years, and had been a master for over 11. The lookout had followed the sea for over 30 years, and the man aft for 23. The result was to have bred in these men an instinct to give the proper number of blasts for the tack the vessel was on, especially after the steamer was heard approaching, and also to lead the man at the wheel and the master to have done as the latter testified he would have done in case there had been but single blasts; that is to say, to have corrected the error in the quick and emphatic language of those who follow the sea. Looking at this fact, and combining it with the testimony of those aboard the Doughty, however it may be subject to comment in any particular, it is not easy to find that it is outweighed. Yet it must be in order to hold the Doughty in fault. As we have already said, the fault of the Columbian was not only flagrant, but, on this appeal, confessedly so. While we have no occasion to state the presumption as to the whole case against a vessel confessedly in fault, or shown to be by uncontradicted evidence, so extremely as it is stated in The City of New York, 147 U. S. 72, 85, 13 Sup. Ct. 211, 37 L. Ed. 84, 85, yet we have no hesitation in adopting the modified form found in The Umbria, 166 U. S. 404, 409, 17 Sup. Ct. 610, 41 L. Ed. 1053, as a practical rule which cannot be disregarded, and which may justly be applied in weighing proofs under the circumstances of the case at bar. There it was said that, "so gross was the fault of the Umbria, that any doubts regarding the management of the other vessel, or the contribution of her faults, if any, to the collision, should be resolved in her favor." Any theory brought forward by the Columbian, guilty, as she was, of a flagrant error, with the view of excusing herself in any part, is subject to suspicion to such an extent that it cannot prevail to hold the schooner, so long as the other probabilities, in connection with the direct proofs, do not so preponderate as to satisfy the mind in her behalf. Since, for the reasons we have stated, we cannot satisfy ourselves that the propositions of the Columbian with reference to the alleged faults of the Doughty are correct, we must necessarily hold that they are not sustained.

The decree of the district court is reversed, and the case is remanded to that court, with directions to enter a decree in favor of the libelants below, on the theory that the Columbian was alone in fault, with interest and the costs of the district court; and the costs of appeal are awarded to the appellants.

ALDRICH, District Judge. This case does not strike me as it does the other judges sitting. I should prefer to rest the decision upon the result reached by the district judge, who saw and heard the witnesses. The majority opinion goes upon the ground that the fault of the schooner, if there was fault, did not contribute to the collision. But it seems to me that the situation on the schooner was inexcusable, and presents such conditions of indifference, at least, if not conditions of carelessness and abandon, as to remove the case from that class of cases which require the appellate court to see clearly, before disturbing the result, that the fault was other or different than that found by the court which saw the witnesses.