# ARGENTINE MINING CO. *v.* TERRIBLE MINING CO.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF COLORADO.

Argued April 21, 1887. — Decided May 27, 1887.

V. sued to recover mining ground. Defendant answered, and V. filed a replication. V. transferred his interest in the mine to a company. The company appeared, was substituted as plaintiff, and filed a new complaint, substantially identical with the first, to which the defendant filed a new answer, substantially like the first answer. No replication was filed to this. The parties went to trial without objection for want of a plea of replication, and judgment was entered for plaintiff. *Held,* That it was too late to take the objection in this court.

The instructions asked by the defendant below were sound in law; but their refusal worked him no injury, as, when the jury found the disputed fact in favor of the plaintiff, the principle involved in the instruction asked cut off the right asserted by the defendant.

When there are surface outcroppings from the same vein within the boundaries of two claims, the one first located necessarily carries the right to work the vein.

When a mining claim crosses the course of the lode or vein instead of being "along the vein or lode," the end lines are those which measure the width of the claim as it crosses the lode: and thus the lines which separate the locations of the parties in this case are end lines across which, as they are extended downward vertically, the defendant cannot follow a vein, even if the apex or outcropping is within its surface boundaries.

THE following is the statement of the case made by the court.

This is an action to recover certain mining ground, being part of what is known as the Adelaide Lode in Lake County, Colorado, lying within the California Mining District. It was originally brought in the name of Frederick S. Van Zandt, who claimed to be the owner of the lode. Subsequently he transferred his interest to a corporation, created under the laws of New York, known as the Terrible Mining Company, and by consent of parties that company was substituted as plaintiff in the action. To the original complaint an answer was filed by

the defendant, the Argentine Mining Company, a corporation created under the laws of Missouri, to which a replication was made.   To the complaint, amended by the substitution of the Terrible Mining Company as plaintiff, a new answer, substantially the same as the one to the original complaint, was filed, but it does not appear from the record that any replication was made to it.   The parties seem to have considered the replication to the original answer as sufficient, for the trial was had without any reference to this omission.   Its absence cannot be made in this court, for the first time, a ground of objection to the subsequent proceedings.   Nor do we consider counsel of the plaintiff in error as making any point upon the omission, although he calls our attention to it.

The plaintiff below, defendant in error here, is the owner of the Adelaide mining claim.   The defendant below, plaintiff in error, is the owner of three other mining claims, called, respectively, the " Camp Bird," the " Pine," and the " Charlestown" lode claims.   All these claims lie in the same mining district. The Adelaide claim was located in 1876.   The other claims were located in 1877.   The Adelaide claim occupies on the surface longitudinally a northeast and southwest direction. The Pine, Camp Bird, and Charlestown claims occupy a position nearly north and south, with end lines practically east and west, thus crossing diagonally the Adelaide claim.   During the summer of 1880, the defendant below carried its mining operations through its own ground into the Adelaide claim, and it justifies its action in this respect by asserting that in doing so it followed a vein which has its outcrop, or apex, within the surface of its own locations.   It cites § 2322, Revised Statutes, in support of its position.   That section provides that locators of mining claims, previously or subsequently made, on any mineral vein, lode, or ledge on the public domain, to which no adverse right existed on the 10th of May, 1872, " so long as they comply with the laws of the United States, and with state, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their loca-

tions, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward, as above described, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges."

And the defendant requested the court to instruct the jury as follows:

"The law provides that upon a location properly made the claimant shall have the vein upon which the location is made and all other veins and lodes having their top or apex in the territory within the lines of the location, and not only within the body of the claim within the lines of the location, but beyond those lines as far as the vein or lode may, in its descent into the earth, pass beyond those lines and within the end lines of the location.

"The defendant here claims that the lode in controversy originates in its patented territory, by its top or apex, and descends upon its dip through and under the ground in controversy. If, from the preponderance of evidence you believe that the top or apex of the lode in controversy does, in fact, originate within the patented territory of the defendant and descends upon its dip into the ground in controversy, your verdict should be for the defendant."

This instruction the court refused to give, and the defendant excepted.

The court instructed the jury substantially as follows: That a statute of the state requires that the discoverer before filing a location certificate shall first locate his claim by sinking a discovery shaft upon the lode to a depth of at least ten feet from the lowest part of the rim of the shaft at the surface, or deeper if necessary, to show a well-defined crevice; 2d. Shall post at the point of discovery on the surface a plain

sign or notice containing the name of the lode, the name of the location, and the date of the discovery; 3d. Shall mark the surface boundaries of the claim by six substantial posts; that to recover a mining claim the plaintiff must show a good location in compliance with this statute, and that means "that he shall show in his discovery shaft a vein or lode of valuable ore in rock in place;" that the miner is not bound to make the first shaft or opening which he may sink his discovery shaft; he can make any one he may sink such shaft, only he must have in it a lode or vein. It is not sufficient for him to find minerals which would yield something, in a fragmentary condition, in the slide or loose tuff on the surface of the mountain, but he must find it within enclosing rocks in the general mass of the mountain; and that the question here is, whether the parties who made the Adelaide location found such a lode or vein in what they denominated the discovery shaft or opening, and that this was a matter to be determined by the jury; and if they find that the locators made such a discovery, the next question was, whether the vein extended to the point in dispute, and that the location was valid only to the extent of the lode included within it. The court added: "The question turns upon the validity of the Adelaide location. As I have explained it to you, if you believe it to be a valid location, well made according to the law as given in the statute, you will find for the plaintiff. If you think it was not so made, you will find for the defendant." To this charge the counsel of the defendant excepted, pointing out the particulars to which he objected. Upon the argument before us, he adhered to his exception to the closing part of the charge, because it was not accompanied by the further instruction, " that if the jury believe from the evidence that the location of the Adelaide claim was made upon the dip of a vein or lode whose top or apex was then in and extended through the patented territory of the defendant, such location of the Adelaide claim would, to the extent that it was on the dip of said vein whose top or apex was so in the defendant's patented territory, be invalid."

The jury rendered a verdict for the plaintiff, upon which

judgment for the possession of the demanded premises was entered, and the defendant has brought the case to this court for review.

*Mr. Walter H. Smith* for plaintiff in error. *Mr. A. T. Britton* and *Mr. A. B. Browne* were with him on the brief.

This writ of error is prosecuted for the sole purpose of determining the right of a mineral claimant who has the apex within his surface lines extended vertically downward to follow his vein outside of his own side lines, and into and under another mineral claim which has a prior location upon the dip of the lode, but which does not embrace the apex.

Section 2322 of the Revised Statutes gives the right under which the plaintiff claims. The language of this section is so plain that it seems to settle the question. The premises in controversy were outside of the side lines, and within vertical planes drawn through the end lines of the Pine and Camp Bird lodes, and just within the side line of the Adelaide. Now it was in reference to these workings and these premises at this point that the court was asked to charge that if they found the apex of this vein within the surface lines of the Argentine claim (which included the Pine and Camp Bird claims), their verdict should be for the defendant.

The court not only refused so to charge, but it *utterly ignored all claim of the defendant on this ground,* and held that it had nothing to do with the case, but that it turned wholly upon the validity of the Adelaide location. The defendant had made, as one of his grounds of defence, the invalidity and irregularity of the Adelaide location.

This was error. The statute has always been construed by the Department as we claim it should be construed. The form of patent in use expressly grants " all other veins, lodes, ledges, or deposits, throughout their entire depths, the top or apexes of which lie inside the exterior lines of said survey at the surface extended downward vertically, although such veins, lodes, ledges, or deposits, in their downward course, may so far depart from a perpendicular as to extend outside the vertical

side lines of said survey;" and excepts from its operation "all veins, lodes, ledges, or deposits, the tops or apexes of which lie inside the exterior lines of said survey at the surface extended downward vertically, or which have been therein discovered or developed;" and further provides, "that the premises hereby conveyed, with the exception of the surface, may be entered by the proprietor of any other vein, lode, ledge, or deposit, the top or apex of which lies outside the exterior limits of said survey, should the same, in its downward course, be found to penetrate, intersect, extend into or underlie the premises hereby granted for the purpose of extracting and removing the ore from such other vein, lode, ledge, or deposit."

All these provisions are found in the patent for the Camp Bird Lode and that of the Pine Lode, and they will be contained in the patent for the Adelaide when it shall be issued.

If they were not contained in the patent, its legal effect would be the same.

The fact that the defendant in error made the first location cannot affect the question now presented. The statute must control. *Mining Co.* v. *Tarbet,* 98 U. S. 463; *Iron Silver Mining Co.* v. *Elgin Mining Co.,* 118 U. S. 196. It gives to the locator who has the apex the right to the lode. A locator who makes a location which does not contain the apex, takes his chances of some other locator who does have the apex, taking from him such portion of his lode as lies within the end lines of the apex claimant.

This precise question has never been determined by this court; but in the case of *Iron Silver Mining Co.* v. *Cheesman,* 116 U. S. 529, it was conceded by all parties and the court that the party having the apex had the right to go outside of his side lines and follow the vein. Mr. Justice Miller, in delivering the opinion of the court, said: "It is obvious that the vein, lode, or ledge of which the locator may have 'the exclusive right of possession and enjoyment,' is one whose apex is found inside of his surface lines extended vertically; and this right follows such vein, though in extending downward it may

depart from a perpendicular, and extend laterally outside of the vertical lines of such survey."

And in *Iron Silver Mining Co.* v. *Elgin Mining Co.*, *supra*, Mr. Justice Field, in delivering the opinion of the court, said: "This section" (referring to § 2322 Rev. Stat.) "appears sufficiently clear upon its face. There is no patent or latent ambiguity in it. They" (the locators) "have also the exclusive right of possession and enjoyment 'of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward, vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward, as to extend outside the vertical side lines of said surface locations.' The surface side lines extended downward vertically determine the extent of the claim, except when in its descent the vein passes outside of them, and the outside portions are to lie between vertical planes drawn downward through the end lines. This means the end lines of the surface location, for all locations are measured on the surface."

No appearance for defendant in error.

MR. JUSTICE FIELD, after stating the case as above, delivered the opinion of the court, as follows:

The instruction, as requested by the defendant, as a proposition of law is undoubtedly sound. It is substantially a brief repetition of the language of the statute. Its refusal, however, did not prejudice the defendant, for a valid location, as defined by the court, could only be found in favor of the plaintiff in case the vein discovered by the locators of the Adelaide claim extended to the ground in dispute. If such were the fact, the principle involved in the instruction asked, applied to that claim, cut off the right asserted by the defendant. If there was an apex or outcropping of the same vein within the surface of the boundaries of the claims of the defendant, that company could not extend its workings under the Adelaide location, that being of earlier date. Assuming that on the

same vein there were surface outcroppings within the boundaries of both claims, the one first located necessarily carried the right to work the vein.

But there are other grounds equally conclusive against the contention of the defendant below. The instruction asked assumes that the longest sides of its claims were their side lines. Such would, undoubtedly, be the case if the locations of the claim were along the course or strike of the lode. The statute undoubtedly contemplates that the location of a lode or vein claim shall be along the course of the lode or vein. Its language is: "A mining claim located after the 10th day of May, 1872, whether located by one or more persons, may equal, but shall not exceed, fifteen hundred feet in length *along the vein or lode;* but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located. No claim shall extend more than three hundred feet on each side of the middle of the vein at the surface, nor shall any claim be limited by any mining regulation to less than twenty-five feet on each side of the middle of the vein at the surface, except where adverse rights existing on the 10th day of May, 1872, render such limitation necessary. The end lines of each claim shall be parallel to each other." Rev. Stat., § 2320.

When, therefore, a mining claim crosses the course of the lode or vein instead of being "along the vein or lode," the end lines are those which measure the width of the claim as it crosses the lode. Such is evidently the meaning of the statute. The side lines are those which measure the extent of the claim on each side of the middle of the vein at the surface. Such is the purport of the decision in *Mining Co.* v. *Tarbet,* 98 U. S. 463. The court there said, referring to the statute of 1866, 14 Stat. 251, and that of 1872, 17 Stat. 91: "We think that the intent of both statutes is, that mining locations on lodes or veins shall be made thereon, lengthwise, in the general direction of such veins or lodes on the surface of the earth where they are discoverable; and that the end lines are to cross the lode and extend perpendicularly downwards, and to be continued in their own direction either way horizontally;

and that the right to follow the dip outside of the side lines is based on the hypothesis that the direction of these lines corresponds substantially with the course of the lode or vein at its apex on or near the surface. It was not the intent of the law to allow a person to make his location crosswise of the vein, so that the side lines shall cross it, and thereby give him the right to follow the strike of the vein outside of his side lines. That would subvert the whole system sought to be established by the law. If he does locate his claim in that way, his rights must be subordinated to the rights of those who have properly located on the lode." And again, that the end lines of the claim, properly so called, are "those which are crosswise of the general course of the vein on the surface."

Such being the law, the lines which separate the location of the plaintiff below from the locations of the defendant are end lines, across which, as they are extended downward vertically, the defendant cannot follow a vein, even if its apex or outcropping is within its surface boundaries, and, as a consequence, could not touch the premises in dispute, which are conceded to be outside of those lines and outside of vertical planes drawn downward through them.

The defendant relied on the trial upon patents of the United States issued for its several claims, but those patents contain an exception which would also seem to exclude its pretensions. It is as follows, after the habendum clause: "excepting and excluding, however, all that portion of said surface ground embraced by mineral survey No. 254 of the Adelaide mining claim, and also, excepting and excluding all veins, lodes, or deposits, the tops or apexes of which lie inside of the exterior lines of said Adelaide survey at the surface, extended down vertically, or which have been therein discovered or developed."

From a consideration of the whole case we are unable to perceive any error which would justify a reversal of the judgment below. It is accordingly

*Affirmed.*