TYLER MIN. CO. v. SWEENEY et al.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1897.)

No. 318.

1. MINES AND MINING—LOCATION—VEIN CROSSING SIDE LINES—EXTRALATERAL RIGHTS.
When a vein of mineral-bearing rock, in its course lengthwise, after passing under the surface limits of one location, on which it outcrops, crosses nearly at right angles the side lines of another, prior location, on which it also outcrops, the side lines of such prior location becoming, by reason of the course of the vein, its end lines, the right to follow the lode in its downward course, between the vertical planes drawn through such side end lines, belongs to such prior location, and the extralateral rights of the other location cease when the vertical plane so drawn between the two locations is reached.

2. COSTS IN EQUITY—DISCRETION OF TRIAL COURT.
The award of costs in equity cases rests in the sound discretion of the trial court, and will not be disturbed by an appellate court except in cases of manifest abuse of such discretion. Accordingly, *held*, in this case, that no sufficient reason appeared for disturbing the decision of the trial court refusing to award costs against a successful defendant, on the ground that it was the real party in interest behind two other defendants, who were unsuccessful.

3. APPEAL AND ERROR—CLERK'S TAXATION OF COSTS.
A writ of error or appeal cannot be taken to review the decision of the clerk upon a taxation of costs, though a decision of the court affirming or reversing a decision of the clerk upon an appeal taken pursuant to the rules of the circuit court may in some cases be so reviewed.

In Error to the Circuit Court of the United States for the District of Idaho.

This cause was tried before the circuit court, a jury having been waived by stipulation of the parties, as provided by section 649 of the Revised Statutes, upon an agreed statement of facts, as follows: "First. That the Tyler Mining Company is the owner of the Tyler mining claim, as described in the fourth paragraph of the complaint, and the said Tyler mining claim, of which the ground so described is a part, was located on September 20, 1885, and has been duly conveyed to the plaintiff in this action. Second. That the Last Chance Mining Company is the owner of the Last Chance mining claim, as described in the said defendant's supplemental answer on file in this case, and that the boundaries of both claims are correctly laid out on the diagrams on file in this action. Third. That a vein of mineral-bearing rock and earth is found in both of said mining claims at the point of discovery on each, and had been discovered therein prior to their location; that the course of the vein in each of the claims is as shown in the diagram, its width, approximately, being about three hundred (300) feet, and its dip from the apex, which is found upon each of said claims, is to the southwesterly at an angle of about forty-five (45) degrees from the horizontal. It is further admitted that the line of the vein, as indicated on the diagram and models, is approximately the line of the footwall, and that the said vein passes through the southerly side line of the Tyler claim as originally located, and crosses the northwesterly end line thereof, and said vein, after crossing the said southerly side line of the Tyler claim, as originally located, passes through and crops upon the Last Chance claim, as shown upon said diagram; that the discovery upon each of said claims was upon said vein so outcropping, and the ores and ore bodies in controversy are in and a part of said vein. It is further admitted that the Last Chance claim was located on the 17th day of September, 1885, and the rights of said company run from that date. The legal existence of the two corporations, the Tyler Mining Company and the Last Chance Mining Com-

pany, is admitted. Fourth. It is admitted that the apex of the vein is within the side lines of the Tyler and also of the Last Chance claims, and that the Last Chance has taken no ores which are not found perpendicularly beneath its surface ground. Fifth. It is admitted that in 1887 the Tyler Mining Company applied for a patent upon the Tyler claim, as originally located, and that the then owners of the Last Chance mining claim duly filed an adverse claim to a certain portion thereof, and that the proceedings upon which application was made and said adverse claim was founded are correctly set forth in the verified transcript of such proceedings, which is here made a part of this statement, and to be considered as such. Sixth. It is further agreed that the Last Chance Mining Company made an application for a United States patent for the Last Chance mining claim, and that such patent had issued therefor, the proceedings upon which said application for patent, and the patent issued thereon, as certified by the commissioner of the general land office, are hereby admitted as a part of this statement. Seventh. It is further agreed that the judgment roll and the findings of fact and conclusions of law certified in the case of the Last Chance Mining Company against the Tyler Mining Company, heretofore offered in evidence in this case, and referred to in the decision in the United States supreme court, in considering this case, are made a part of this statement. Eighth. It is further agreed that the map of the plaintiff (Exhibit A) and models may be treated and regarded as a part of this statement for any purpose which the court may deem material, and that the diagram, as found in the report of the case in 54 Fed. 284 [4 C. C. A. 329, and 7 U. S. App. 463], is the diagram which is referred to herein, and is made a part hereof. It is admitted that the defendant the Last Chance Mining Company has taken a large amount of ore out of the vein aforesaid, claiming to be the owner thereof, and if the court shall find that the Tyler Mining Company is entitled to the said vein, under the surface boundary, that the Last Chance Mining Company is liable therefor, and that an accounting of the value of the same may be had hereafter to ascertain such value."

The diagram referred to in the eighth statement of facts is as follows:

John R. McBride, for plaintiff in error.

W. B. Heyburn, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts as above). This is an action in ejectment to recover that portion of the Tyler lode which is alleged to have its apex inside the Tyler location, and to extend on its dip southerly beyond the surface side line of the Tyler claim, and for damages. It was brought against several individual defendants and three different mining corporations, namely, the Last Chance Mining Company, the Idaho Mining Company, and the Republican Mining Company. It has been dismissed as to the individual defendants. At the first trial in the circuit court, judgment was rendered in favor of the Last Chance Company, and against the Republican and Idaho Mining Companies, neither of which sued out any writ of error from that judgment. The Tyler Company sued out a writ of error to this court, and the judgment in favor of the Last Chance Mining Company was reversed. Mining Co. v. Sweeney, 4 C. C. A. 329, 54 Fed. 284, and 7 U. S. App. 463. Upon the second trial, judgment was rendered in favor of the Tyler Mining Company against all of the defendants in the action. The Last Chance Company sued out a writ of error to this court, and the judgment of the circuit court was affirmed. Last Chance Min. Co. v. Tyler Min. Co., 9 C. C. A. 613, 61 Fed. 557. Thereafter, on application of the Last Chance Mining Company, the case was taken to the supreme court by writ of certiorari, and the judgments of this court and of the circuit court were reversed, and the cause remanded to the latter court, with instructions to grant a new trial. 157 U. S. 683, 15 Sup. Ct. 733. The judgment of the circuit court of appeals was reversed solely upon the ground that it did not give the proper effect to a former judgment establishing priority in favor of the Last Chance claim location. Upon the third trial in the circuit court, judgment was rendered in favor of the Last Chance Company for its costs. The present writ of error is taken to have this judgment reviewed. The diagram referred to in the agreed statement of facts shows the course of the lode or vein lengthwise through the Tyler and Last Chance claims. The ore body in dispute is on the dip of the lode or vein within the extended vertical planes of the end lines of the Tyler claim. It is also within the side lines of the Last Chance claim, and on the dip of the vein as it passes through that claim. The question as to which claim was first located necessarily determines the rights of the respective parties.

When this case was first before this court, we said:

"From the diagram in this case it appears that the lode, in its course lengthwise, crosses the side lines of the Last Chance location at nearly right angles; and, under the rules laid down in the decisions of the supreme court of the United States, the side lines of the location of the Last Chance, as marked on the surface of the ground, are to be treated at its end lines; and the owners thereof would have the exclusive right of possession and enjoyment of such portion of the lode throughout its entire depth, the top or apex of which is inside of the surface lines of the location, as lies between vertical planes drawn

downward through such end lines. It therefore appears that both locations were made in such form and shape as has been recognized by the adjudicated cases upon these questions to entitle them to certain fixed and definite rights to follow the lode in its downward course, and the rights of the Tyler Company and of the Last Chance Company in this respect depend upon the question of their priority. * * * In cases of controversy, where the right exists under each valid location to follow the lode in its downward course, it necessarily follows that both locations cannot rightfully occupy the same space of ground; and, in all cases where a controversy of this kind arises, the prior locator must prevail, precisely as in cases of like controversy between locations overlapping each other lengthwise on the course of the lode. This is the rule as announced by the court below upon this branch of the case, and it is, in our opinion, sound, logical, and just, and is sustained by authority. Mr. Justice Field, in Argentine Mining Co. v. Terrible Mining Co., supra, in reviewing an instruction given by the circuit court, said: 'If there was an apex or outcropping of the same vein within the surface of the boundaries of the claims of the defendant, that company could not extend its workings under the Adelaide location, that being of earlier date. Assuming that on the same vein there were surface outcroppings within the boundaries of both claims, the one first located necessarily carried the right to work the vein.' "

In Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 687, 15 Sup. Ct. 734, the court said:

"The course of this vein is across the Last Chance claim, instead of in the direction of its length. Under those circumstances the side lines of that location become the end lines, and the end the side lines. Mining Co. v. Tarbet, 98 U. S. 463; Argentine Min. Co. v. Terrible Min. Co., 122 U. S. 478, 7 Sup. Ct. 1356; King v. Mining Co., 152 U. S. 222, 14 Sup. Ct. 510."

Upon the agreed statement of facts, the priority of the Last Chance claim is established. This being true, its extralateral rights to follow the lode in its downward course, between vertical planes drawn through its side end lines, is well settled, and the extralateral rights of the Tyler claim cease when the vertical plane drawn downward through the north side end line of the Last Chance claim is encountered. It follows that the court did not err in rendering judgment in favor of the Last Chance Company for its costs, and it is therefore unnecessary to determine what the extralateral rights of the Tyler Company would have been had the lode, when it crossed the southerly side line of the Tyler claim, extended in an easterly, instead of a southerly, direction, as shown in the diagram, or, in other words, "more along than across the lode."

2. It is claimed that the court erred in not allowing costs in favor of the Tyler Company against the Last Chance Company. The argument in support of this position is that the locations of the Republican Fraction claim, the Skookum Fraction, and the Last Chance Fraction, owned by the defendants the Republican and Idaho Mining Companies, were made simply as outposts for the protection of the Last Chance claim, in order to include ground where it was supposed the lode which had its apex in the Last Chance claim might be found; that the said corporations, the Republican and Idaho Mining Companies, were organized, managed, and controlled by the officers and members of the Last Chance Mining Company; that all the work done and performed on all the claims was directed and paid for by the Last Chance Company, and that it was in the actual possession of all the premises sued for by the Tyler Company; that, the Tyler Company having recovered a judgment against the

Republican and Idaho corporations for a portion of the lode claimed by it, it is entitled to a judgment for costs against the Last Chance Company, as well as against the other defendants, it being the real party in interest in defending the action. The facts concerning this question were all before the trial court, and, in the very nature of the case, that court would be in a better position to determine the question than this court could possibly be. It is apparent from the facts before us that the real contention of the parties was as to the ownership of the ore bodies found in the Last Chance claim, and with reference to this the final judgment was in favor of the Last Chance Company, and entitled it to recover its costs against the Tyler Company. The record shows that a separate defense was made by three distinct corporations, each claiming to be the owner of separate mining claims. The Tyler Company recovered judgment against two corporations, namely, the Republican and Idaho. In equity cases and in other cases where there are no statutory provisions or rules of practice, the award of costs, as well as the taxation thereof, rests in the sound discretion of the trial court, and will not be reviewed in the appellate court, except in cases of a manifest abuse of such discretion. Kittredge v. Race, 92 U. S. 116, 121; Cole v. Logan, 24 Or. 304, 314, 33 Pac. 568; Woodward v. Baird, 43 Neb. 310, 317, 61 N. W. 612; Wells v. Tolman (Sup.) 34 N. Y. Supp. 840, 843; McChesney v. City of Syracuse, 75 Hun. 503, 508, 27 N. Y. Supp. 508. But "in actions at law it is a general rule that the losing parties, or the parties against whom judgment is rendered, are to pay the costs, and no apportionment of the costs is made between them. Each is liable for all, whatever may be their respective interests in the subject-matter of the suit." Kittredge v. Race, supra. It is unnecessary to determine the question whether there are any circumstances which would change this rule in its application to the taxation of costs in the judgment obtained by the Tyler Company against the Republican and Idaho Mining Companies, as that question is not properly before us for review. We are of opinion that, upon the facts presented in the record, the court did not err in refusing to tax any costs against the Last Chance Company.

3. The last question argued by respective counsel relates to the costs taxed by the clerk in favor of the Last Chance Company. This question is not presented by the record in such a manner as to authorize this court to review the same. Conceding, for the purposes of this opinion, that a writ of error or appeal may be taken in certain cases from the decision of the court affirming or reversing the action of the clerk in taxing costs, yet it is manifest that such writs cannot be taken from the decision of the clerk. The state courts, where the statute permits an appeal to be taken from the taxation of costs, hold that, in order to authorize the appellate court to review the taxation of costs, a motion to retax the costs must first be made in the trial court, and a ruling obtained thereon by that court, to which an exception is duly taken. Real v. Honey, 39 Neb. 516, 520, 58 N. W. 136; Richards v. Borowsky, 39 Neb. 774, 58 N. W. 277; Roberts v. Drehmer, 41 Neb. 306, 310, 59 N. W. 911; Haskell v. Valley Co. (Neb.) 59 N. W. 680. But, what-

ever the rule may be in the state courts, the question is settled by the rules adopted for the government of the United States courts. The rules of practice of the circuit courts for this circuit provide for the filing of the cost bill, and for the taxation of costs by the clerk, and specify in what manner objections thereto may be made. Rules 17 and 18. Rule 18, among other things, declares that "the taxation of costs made by the clerk shall be final unless modified on appeal as provided in rule 19." Rule 19 provides that "an appeal from the decision of the clerk, in the taxation of costs, may be taken to the court, or judge, orally, by either party, instanter, or by motion to retax upon written notice of not less than one nor more than two days, given and filed with the clerk, within two days after the costs have been taxed in the clerk's office, but not afterward." The record shows that the clerk taxed the costs in the case, and disallowed the sum of $6,287.35 in the cost bill of the Last Chance Company; but it is silent upon the subject as to whether any appeal was taken from the decision of the clerk to the judge. This court cannot review the action of the clerk of the circuit court. Under the practice prescribed by the rules, the taxation of the costs as made by the clerk becomes final, unless an appeal is taken therefrom to the court or judge within the time mentioned in rule 19. The law is well settled than an appeal or writ of error does not lie from a judgment or decree as to costs merely. Canter v. Insurance Co., 3 Pet. 307, 319; Fabrics Co. v. Smith, 100 U. S. 110; Wood v. Weimar, 104 U. S. 786, 792; Russell v. Farley, 105 U. S. 433, 437; Machine Co. v. Nixon, Id. 766, 772; Bank v. Hunter, 152 U. S. 512, 516, 14 Sup. Ct. 675; Du Bois v. Kirk, 158 U. S. 58, 67, 15 Sup. Ct. 729; Clarke v. Warehouse Co., 10 C. C. A. 387, 62 Fed. 328, 334. The judgment of the circuit court is affirmed, with costs.