LAST CHANCE MIN. CO. et al. v. BUNKER HILL & S. MINING & CONCENTRATING CO.

(Circuit Court of Appeals, Ninth Circuit. May 31, 1904.)

No. 985.

1. MINING CLAIMS—SUIT TO ESTABLISH EXTRALATERAL RIGHTS—SUFFICIENCY OF BILL.

A bill filed by the owner of a lode mining claim to establish extralateral rights and quiet its title need not allege the general course of the vein beyond the limits of the claim.

2. SAME—POSSESSION—EXTRALATERAL RIGHTS.

The ownership and possession of the surface of a lode mining claim carries with it the ownership and possession of the lode which has its apex therein to the full extent of the extralateral right given by the statute to the owner of the claim.

3. SAME—RIGHTS ACQUIRED BY LOCATION—INTEGRAL CHARACTER.

The right given by the location of a lode mining claim in that portion of the vein lying within its surface boundaries and that portion lying beyond them in which the statute gives the owner extralateral rights is integral, and no adverse right can be acquired by the locator of another claim in respect to the latter portion that could not in respect to the former.

4. SAME—PRIORITY OF EXTRALATERAL RIGHTS—FAILURE TO RECORD NOTICE.

The fact that the locator of a lode claim failed to record his location notice within 15 days, as required by the Idaho statute, did not invalidate

the location, there being no such penalty affixed by the statute, and the locator of another claim on the same vein within the 15 days, with knowledge of the prior location, and that the owner was in possession and actually engaged in working the claim, acquired no rights to conflict with those of the older claim either in the surface or underground portion of the vein.

5. SAME—VALIDITY OF LOCATION—EFFECT OF ISSUANCE OF PATENT.

The issuance of a patent for a mining claim is conclusive evidence of the sufficiency of the steps taken by the locator as against one claiming adverse rights.

6. APPEAL—REVIEW—FINDINGS OF FACT.

Findings of fact made by a master in pursuance of the order of the court that depend upon conflicting testimony or upon the credibility of witnesses, especially where they have been approved by the trial court, will not be disturbed on appeal.

7. MINING CLAIMS—EXTRALATERAL RIGHTS.

The fact that a vein or lode is of such width on the surface as to extend beyond the side line of a claim located thereon does not affect the extralateral rights of such claim as against a junior location.

8. SAME—END LINES OF LODE CLAIM—MISTAKE IN DIRECTION OF LODE.

Where the apex of a vein crosses what were originally intended as the side lines of a lode claim, and they are parallel, they become, by operation of law, the end lines.

9. SAME—EXTRALATERAL RIGHTS—COURSE OF VEIN.

Where the end lines of a lode claim cross the surface outcropping of a vein, they determine the extralateral right of the claim, without regard to the angle at which they cross the general course of the vein; its course for that purpose being fixed by the course of the apex on the surface of the claim.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Idaho.

W. B. Heyburn, John P. Gray, and F. T. Post, for appellants.
Curtis H. Lindley, Henry Eickhoff, and M. A. Folsom, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. In the court below the appellee was complainant, and the appellants defendants. For convenience of reference, the complainant Bunker Hill & Sullivan Mining & Concentrating Company will be referred to as the "Bunker Hill Company," the defendant Last Chance Mining Company as the "Last Chance Company," the defendant Shoshone Mining Company as the "Shoshone Company," and the defendant Empire State-Idaho Mining & Developing Company as the "Empire Company."

The bill of complaint alleges the Bunker Hill Company to be the owner in fee in possession and entitled to the possession of that certain mine and lode mining claim situated in Yreka mining district, Shoshone county, Idaho, known as the "Bunker Hill Lode Mining Claim," and specifically described in the bill; that within that claim there is a vein or lode of rock in place carrying silver, lead, and other valuable minerals, the general course or strike of the top or apex of which at the surface within the claim is northerly and southerly, on which course the

¶ 9. See Mines and Minerals, vol. 34, Cent. Dig. §§ 75, 76.

top or apex of the vein crosses the southerly end line thereof at a point 300 feet westerly from its corner No. 3, and, continuing on its northerly course, the top or apex of the vein passes through the claim and crosses the northerly end line thereof at a point about 700 feet westerly of corner No. 2 of the claim, and that the said vein or lode on its downward course westerly passes out of and extends indefinitely beyond a vertical plane drawn through the westerly boundary thereof; that this vein or lode is the only vein or lode having its top or apex within the limits of the Bunker Hill claim, and is the vein or lode originally discovered on the 10th day of September, 1885, by the grantors of the Bunker Hill Company. Attached to and made a part of the bill is a diagram, which shows that the claim was located across the top or apex of the vein, instead of along it. It is not shown or suggested that this was knowingly or purposely done; on the contrary, it appears in this and other records in this court that at the time the Bunker Hill claim, and others within the immediate vicinity, were located, it was supposed by the locators thereof that the vein or lode outcropping thereon ran in an easterly and westerly direction. That fact is referred to by counsel for the present appellants in his brief on behalf of the Empire Company in cause numbered 950, where, in speaking of a dispute between the owners of the Stemwinder and Emma claims in December, 1885, he said: "The Stemwinder at that time lay in an easterly and westerly direction. It was supposed that the ledges ran easterly and westerly, and that the ledges of the Stemwinder and Emma were separate and parallel ledges." What were intended as the side lines of the Bunker Hill claim, therefore, actually became its end lines, under the familiar doctrine hereinafter referred to.

The bill further alleges that the Bunker Hill Company is, and for many years has been, the owner in fee and in the actual and exclusive possession of the Bunker Hill claim, and of the apex of the Bunker Hill lode within the claim, and of such part of the said vein or lode throughout its entire depth as lies westerly from, outside of, and beyond a vertical plane drawn downward through the westerly side line of the claim, and between vertical planes drawn downward through the end lines thereof extended indefinitely in their own direction westwardly; that neither of the defendants to the suit is, or ever has been, in possession of any part of the Bunker Hill claim or of the Bunker Hill lode as thus described, and that each of them claims an estate or interest therein adverse to the Bunker Hill Company, which the latter alleges to be false and groundless, and without any right whatever, and a cloud upon its title; that the value of that part of the Bunker Hill lode situated westerly of its side line, and between vertical planes drawn downward through its end lines, exceeds the sum of $500,000, exclusive of interest and costs. The prayer of the bill is, among other things, that the defendants, and each of them, be required to set forth the nature of their respective claims, and for a decree adjudging the alleged title of the complainant to be good and valid, and that the defendants have no interest in or to the Bunker Hill claim or lode as described in the bill.

The defendants interposed a demurrer to the bill on the ground that it did not make or state such a case as doth or ought to entitle the

complainant to any such discovery or relief as is thereby sought or prayed for. The demurrer being overruled, each of the defendants filed a separate and similar answer, and also a cross-bill, differing only in that each alleged ownership in the respective defendants of separate and distinct mining claims. Each of the answers admits that the complainant owns the surface of the Bunker Hill claim, and the vein or lode within its boundaries, but denies that the course of the vein is northerly and southerly, or that it crosses the alleged side line thereof, or that in its downward course it passes westerly beyond a vertical plane drawn through the west side line of the Bunker Hill claim, or that the complainant company is the owner of any part of the lode situated west of its alleged west side line.

The cross-bills alleged ownership, respectively, in the Last Chance Company of the Last Chance mining claim; in the Shoshone Company of the Shoshone and Summit mining claims; and in the Empire Company of 16 other mining claims, specifically named and described—all of which, with the outcrop of the vein or lode therein, its course and dip, and its conflict with the extralateral right claimed by the Bunker Hill Company, are described in the respective cross-bills. They also allege that the vein or lode described in the Bunker Hill claim does not cross its end lines as now claimed, but crosses its original end lines, and that the Bunker Hill Company's right to follow its vein or lode downward is between the parallel vertical planes drawn through its located end lines; that the course of the vein or lode, instead of being northerly and southerly, is north, about 51° west, and that to follow it westerly, as complainant claims the right to do, would be following it more along its course or strike than upon its true dip. The prayer of the cross-bills was to the effect that the Bunker Hill Company be required to set forth any and every adverse interest, claim, or demand which it had to the claims, veins, or lodes described in the cross-bills, whether the same be claimed by the Bunker Hill Company by virtue of its ownership of the Bunker Hill claim and of the lode apexing therein or by virtue of its ownership of any other claim, vein, or lode, and that such adverse claim, interest, or demand be decreed null and void as against the cross-complainants, and that their respective titles thereto be quieted.

To each of the cross-bills the Bunker Hill Company demurred on the ground that it presented mere matter of defense, and that the mining claims therein described were not included in or embraced by the original bill of complaint. The demurrers to the cross-bills were sustained by the court below.

We think the ruling of the court below upon all of the demurrers was right. Two objections are made to the bill. One is that it contains no allegation concerning the general course of the vein beyond the limits of the Bunker Hill claim; and the other that the bill does not show that the complainant is the legal owner and in the exclusive possession of the ore bodies in controversy. In respect to the first objection, it is not perceived that there is any necessity for an averment in such a bill concerning the general course of the vein beyond the limits of the claim. The statute authorizes citizens of the United States and

those who have declared their intention to become such, who find a vein or lode upon the public land, carrying any valuable deposit, to locate and claim the same, not exceeding 1,500 feet along its length, and not exceeding 300 feet on each side of its middle at the surface, making the end lines of the claim parallel. Rev. St. § 2320 [U. S. Comp. St. 1901, p. 1424]. The right of location is in no respect made dependent upon the course of the vein beyond the limits so fixed. A location so made, and marked and claimed as further required by statute, or by the local rules and regulations of the particular mining district, when not inconsistent with statutory regulations, confers upon the locator and his assigns and successors the rights defined and specified by section 2322 of the Revised Statutes [U. S. Comp. St. 1901, p. 1425], to wit:

"The exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface-lines extended downward vertically, although such veins, lodes or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side-lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges."

Whether the lines of the Bunker Hill claim were so laid with respect to the vein or lode outcropping within them as entitles the complainant to the extralateral right there defined and here claimed, depends upon the probative facts of the case.

In respect to the second objection urged to the bill, it is enough to say that it has heretofore been held by this court that the ownership and possession of a vein at the surface carries with it the ownership and possession of all that pertains to the location. "The mining right," as said by us in Empire State-Idaho M. & D. Co. v. Bunker Hill & S. M. & C. Co., 121 Fed. 977, 58 C. C. A. 315, "is an integral one. It is secured by a single location. The title to it is conveyed by one patent." It is a separate and distinct thing from any and every other claim. The fact that one individual, company, or corporation locates or acquires many such claims is wholly unimportant. Congress has never yet seen proper to put a limit on the number of such claims that one individual, company, or corporation may locate or acquire. Whether, in view of its well-known policy to encourage the development of the mineral wealth of the country, it shall ever deem it wise to do so, rests with Congress, and is a matter with which the courts have nothing to do. The rights which a valid location of such a claim secures to the locator and his grantees or successors are clearly defined by law, and are wholly unaffected by any subsequent conflicting location. In all such matters the first in time is the first in right. Therefore it being conceded by the defendants' answers in the present suit that there is a vein or lode outcropping within the surface boundaries of the Bunker Hill claim, and that the complainant is the owner of the surface of that claim and of the vein or lode within its boundaries, it follows, as matter of law, that, if the vein or lode so crosses the lines of the claim as to entitle its owner to extralateral rights at all, the complainant has, as against any and

every other claim not founded on a prior location, precisely the same right, by virtue of section 2322 of the Revised Statutes, to such parts of all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of its surface lines, as lie between vertical planes drawn downward vertically through the end lines of the location extended indefinitely in their own direction.

A stipulation of the parties is to the effect that every one of the claims here in question, except the Last Chance, is subsequent in point of time to the Bunker Hill. Priority is asserted for the Last Chance only upon the fact that it was located, marked, and the notice of its location recorded, before the location notice of the Bunker Hill was recorded. A statute of the state in which the claims are situate requires such notice to be recorded within 15 days after the making of the location, in the office of the recorder of the county or with the recorder of the district designated by the resident miners, as provided by section 3103 of the Revised Statutes of Idaho of 1887. The statute, however, prescribes no penalty for a failure to record such notice.

The master found as facts that the Bunker Hill claim was located September 10, 1885, by one O'Rourke, who possessed the necessary qualifications, and who had theretofore discovered within its limits a vein of rock in place carrying silver and lead; that on the day named O'Rourke posted "a discovery notice of location," containing the name of the location and claim, the date of its location, a description of the claim by reference to such natural objects and permanent monuments as identified it, and reciting "such other matters as were then required by the laws of the United States and the territory of Idaho"; that at the same time O'Rourke marked the boundaries of the claim on the ground so that they could be readily traced, and then entered into the actual possession of the claim and commenced working it, which possession has been ever since maintained by him and his successors in interest; that on September 29, 1885, O'Rourke caused a notice of location of the claim, duly verified, to be recorded in the office of the recorder of the county in which it is situate; that prior to March 21, 1902, the complainant duly acquired, through mesne conveyances from O'Rourke, the title to the claim, and on the day last mentioned made application to the United States for a patent therefor, which application recited the facts just stated, and upon which application a patent was issued by the government to the complainant on the 17th day of November, 1903; that the Last Chance claim was duly located September 17, 1885, and the location notice thereof recorded on the 22d day of the same month; that prior to the discovery and location of the Last Chance its discoverers and locators "had actual knowledge of the discovery and location of the Bunker Hill claim; they had visited the discovery, read the notice posted thereon, saw the discovery stake, the east end stakes, and knew that the locator was in the actual possession of the claim, and was then engaged in development work thereon." The record shows that during the proceedings before the master the following stipulation was entered into by and between counsel for the respective parties:

"Mr. Heyburn: It is stipulated that the discovery of the Bunker Hill lode claim was on the 10th of September, 1885; that the acts of location, except

as to the recording, were performed at or prior to that time; and that the recording of the claim was on the 29th day of September.

"Mr. Lindley: In other words, it will be admitted by all the parties to this action that all the acts establishing a perfected location were completed prior to the acquisition of any rights asserted by respondents, or any of them, in this action; respondents reserving, however, such legal objection as they may hereafter desire to make with regard to the application of the doctrine of relation, for the failure to record the Bunker Hill location prior to the 29th day of September.

"Mr. Heyburn: No objection is raised to the sufficiency of the location of any of our claims.

"Mr. Lindley: I must make a reservation in there in reference to the Shoshone and Summit. That is the only reservation that I make.

"Mr. Heyburn: I think we will have to stipulate all or none, judge. As to the Shoshone and Summit, we will only be required to make proofs of the acts of location, and the admission goes to the effect that whatever title the locators got is vested in the Shoshone Mining Company.

"Mr. Lindley: If any title goes by that location, it is vested in you by mesne conveyances."

The record further shows that at a subsequent stage in the proceedings the following stipulation between the counsel was read in evidence:

"Mr. Heyburn: I offer in evidence a stipulation entered into this day, signed in open court by the counsel for the respective parties to this suit, as follows: 'It is hereby stipulated in the above-entitled cause that if Philip O'Rourke, the locator of the Bunker Hill lode claim, were present as a witness in this case, he would testify that the west end stakes of the Bunker Hill lode claim were not put up, nor was the west end of said claim marked upon the ground by the locators, until after the location and recording of the Last Chance and Emma lode claims.' That stipulation is signed by counsel for the respective parties in this suit. I offer it in evidence, in order that it may be here in the record.

"Mr. Lindley: We will reserve a formal objection to the materiality and admissibility of it.

"(Overruled. Exception.)"

We do not think it necessary to decide whether a stipulation to the effect that a certain witness would, if present, testify in contradiction of one or more of the facts already agreed to by counsel, could be properly held to modify such prior stipulation, for the reason that upon the facts expressly conceded, found, and in no wise contested the Last Chance was located after the Bunker Hill, and while the latter was a valid, subsisting claim. At the time of the location of the Last Chance claim the time prescribed by the Idaho statute within which the Bunker Hill location should be recorded had not expired. The Last Chance locators had actual notice of the Bunker Hill location, had read the description of it, and the locator of the Bunker Hill was in actual possession of that claim and actually engaged in working it. No part of the claim, therefore, whether above or underground, was then open to location by any other person. Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735; Book v. Justice Mining Co. (C. C.) 58 Fed. 106; Meydenbauer v. Stevens (D. C.) 78 Fed. 787; Jordan v. Duke (Ariz.) 53 Pac. 197.

It is conceded by the counsel for the appellants that the locators of the Last Chance could not then have entered upon the surface of the Bunker Hill claim and acquired any right as against it; but he insists that it is different in respect to such portions of its veins or lodes as lie outside of

the vertical boundaries of that claim. The mistake of the learned counsel is in supposing, as he does throughout his argument, that there is a radical difference in the nature of the right by which the locator of a valid lode claim holds the veins or lodes embraced by the surface lines extended vertically downward, and such of the veins or lodes belonging to the claim as extend in their downward course outside of its side lines; and that as to the latter adverse rights may be acquired which could not be acquired in respect to the former. As has been already said herein, there is no such distinction. The mining right is an integral one, and is precisely the same to all that belongs to the location—its surface, and all veins or lodes apexing within it, and all not apexing elsewhere, found within the surface lines extending vertically downward, as well as the extralateral right defined by section 2322 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1425]. The St. Louis Mining and Milling Company of Montana et al. v. Montana Mining Company, Limited (decided May 2, 1904) 24 Sup. Ct. 654, 48 L. Ed. 953. That the failure of the locator of the Bunker Hill claim to record his notice of location within the time prescribed by the Idaho statute did not work a forfeiture of the claim, there being no such penalty affixed by the statute, is well settled. Jupiter Mining Co. v. Bodie Con. Min. Co. (C. C.) 11 Fed. 666; Bell v. Bedrock T. & M. Co., 36 Cal. 214; McGarrity v. Byington, 12 Cal. 426; Johnson et al. v. McLaughlin et al. (Ariz.) 4 Pac. 130; Emerson v. McWhirter (Cal.) 65 Pac. 1036; Rush v. French (Ariz.) 25 Pac. 816. Besides, the issuance by the government of its patent for the claim is conclusive evidence of the sufficiency of the steps taken by the complainant. Davis v. Weibbold, 139 U. S. 507, 11 Sup. Ct. 628, 35 L. Ed. 238; United States v. Iron & S. M. Co., 128 U. S. 673, 9 Sup. Ct. 195, 32 L. Ed. 571; Montana Cent. Ry. Co. v. Migeon (C. C.) 68 Fed. 811. Whether the surface lines of the Bunker Hill claim were so laid as to entitle its owner to any extralateral right at all; whether, if it exists, it should be bounded by vertical planes drawn downward through what were originally located as the end lines of the claim or through those originally located as its side lines; and whether the extralateral right claimed by the complainant and awarded it by the court below is to permit the complainant to follow the vein along its length, and not on its downward course, as prescribed by the statute—were matters of defense open to all of the defendants in the court below, and upon which much evidence was given by the respective parties.

The master, to whom the cause was referred to take the proofs and report to the court his findings of fact and conclusions of law, found, among other things, the following to be facts: That within the Bunker Hill claim there is a vein or lode of rock in place, carrying silver and lead, commonly known in the district as the "Bunker Hill Lode," the apex of which is indicated by the outcrop of the foot wall, which traverses the claim in a general northwesterly course from where it cuts the south boundary; that the foot wall is the well-defined and persistent feature of this vein, and enters the Bunker Hill claim at a point on its south line about 300 feet from the southeast corner, and, extending along its course at the surface northwesterly, passes out of the north line

of the claim about 726 feet from the northeast corner of the claim; that the Bunker Hill lode has no physical hanging wall, no marked line complement to the foot wall, in defining the limit of the fissure; that for its underlying boundary it has a well-defined, continuous bed of barren quartzite, but for its overlying boundary it has only an irregular and vague outline of the limit of mineralization, from which fact, and the peculiar geological formation of the lode, it is very difficult to define this limit with any degree of certainty, for which reason much confusion and some contradiction appears in the testimony upon this point; that the weight of the testimony shows, however, that the mineralization of this lode or ledge extending from the foot wall into the hanging wall country gradually fades in value until a point is reached 350 or 400 feet out, where the rock is practically barren; that the lode or vein, in passing through the Bunker Hill claim, takes a northwesterly and southeasterly direction, and so intersects the north and south lines of the claim, which lines, while originally located as side lines, are in fact its end lines, and the original end lines become its side lines; that there is within the surface boundaries of the Bunker Hill claim the entire apex of the vein for a length of 676 feet, measured on the line of the foot wall at the surface, and that a segment of part of that vein departs from the perpendicular in its downward course, and extends in a westerly direction under the outside of the westerly side of the claim, the same having been originally located as the westerly end line, and between vertical planes drawn downward through the end lines of the claim as above designated, so continued in their own westerly direction indefinitely; that the vein, or segment thereof, having its apex within the surface boundaries of the Bunker Hill claim on its downward course between the extended end line planes thereof, extended in their own direction, passes underneath respective portions of the surface of the following lode claims owned by the Empire State-Idaho Mining & Developing Company, namely, the Lily May, Butte, Good Luck, and Number 4, all of which are junior in point of time to the location of the Bunker Hill claim. And as conclusions of law, the master found:

"(1) That the surface lines of the Bunker Hill claim, originally located as side lines, are in law the end lines of the claim, and its extralateral right is defined by vertical planes drawn downward through these lines extended in their own direction westerly indefinitely.

"(2) That the complainant is the owner and entitled to the possession of the segment of said Bunker Hill lode and the ore-bodies thereof in controversy herein, as against the respondents Last Chance Mining Company, the Shoshone Mining Company, the Empire State-Idaho Mining & Developing Company; and that complainant is entitled to a decree against said respondents, and each of them, in accordance with these findings and conclusions, and agreeable to the practice of this court."

Certain exceptions were filed by the defendants to the master's report, but none calling in question any ruling of his in admitting or rejecting evidence. Findings of fact made without any evidence to support them may, and should, as a matter of course and of law, be disregarded; but findings made by a master in pursuance of an order to take the proofs and report the facts and conclusions of law to the court, that depend upon conflicting testimony, or upon the credibility of witnesses, especially where, as in the present case, they are approved by the trial

court, will not be disturbed. Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289; Warren v. Keep, 155 U. S. 265, 15 Sup. Ct. 83, 39 L. Ed. 144; Crawford v. Neal, 144 U. S. 585, 12 Sup. Ct. 759, 36 L. Ed. 552; The Iroquois, 194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955 (May 2, 1904); The S. B. Wheeler, 20 Wall. 385, 22 L. Ed. 385; The Lady Pike, 21 Wall. 1, 8, 24 L. Ed. 672; The Richmond, 103 U. S. 540, 3 L. Ed. 670; Towson v. Moore, 173 U. S. 17, 19 Sup. Ct. 332, 43 L. Ed. 597; Smith v. Burnett, 173 U. S. 430, 436, 19 Sup. Ct. 442, 43 L. Ed. 756; Singleton v. Felton, 101 Fed. 526, 42 C. C. A. 57; The Columbian, 100 Fed. 991, 41 C. C. A. 150; North American Exploration Co. v. Adams, 104 Fed. 404, 45 C. C. A. 185; Fidelity & Casualty Co. v. St. Mathews Sav. Bank, 104 Fed. 858, 44 C. C. A. 225; Western Union Tel. Co. v. American Bell Tel. Co. (C. C.) 105 Fed. 684; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 45 C. C. A. 544; Chauncey v. Dyke Bros., 119 Fed. 1, 55 C. C. A. 579; Thallman v. Thomas, 111 Fed. 277, 49 C. C. A. 317.

The appellants do not, and, in view of the record, could not, contend that there is no evidence to support the findings; but they urge that the weight of the evidence is to the effect that the true course of the vein or lode in question runs easterly and westerly, instead of northwesterly and southeasterly, through the Bunker Hill claim, and crosses the lines originally located as the end lines of that claim; and that, even if its course through the Bunker Hill claim be as found by the master, its width is far greater than found by him, and in fact extends outside of and beyond the westerly boundary of that claim, originally located as one of its end lines and now treated as its westerly side line. The conclusive answer to all of this is that above indicated, viz., that the findings by the master, made, in this instance, upon evidence that is decidedly conflicting, and approved by the court below, are against the appellants upon these points. But it may be added that, even if the vein or lode be as extensive in width upon the surface as contended by the appellants, the priority of the Bunker Hill claim over those here in controversy being established, the extralateral right of the appellee would remain as fixed and determined by the decree of the court below. Empire State-Idaho M. & D. Co. v. Bunker Hill & Sullivan M. & C. Co., 114 Fed. 417, 52 C. C. A. 219; St. Louis M. & M. Co. v. Montana Min. Co., 104 Fed. 664, 44 C. C. A. 120, 56 L. R. A. 725, and like cases there cited. The case showing that the lines originally located as the side lines of the claim are parallel, and it appearing from the findings that the apex of the vein or lode in question crosses those lines, they become in law the real end lines of the claim, under the well-settled doctrine upon that subject. Flagstaff M. Co. v. Tarbet, 98 U. S. 463, 25 L. Ed. 253; Argentine M. Co. v. Terrible M. Co., 122 U. S. 478, 7 Sup. Ct. 1356, 30 L. Ed. 1140; Del Monte M. & M. Co. v. Last Chance M. Co., 171 U. S. 55, 18 Sup. Ct. 895, 43 L. Ed. 72; Tyler Min. Co. v. Last Chance M. Co. (C. C.) 71 Fed. 849; Tyler v. Sweeney, 79 Fed. 277, 24 C. C. A. 578; Last Chance M. Co. v. Tyler Min. Co., 157 U. S. 683, 15 Sup. Ct. 733, 39 L. Ed. 859; Empire M. & M. Co. v. Tombstone M. & M. Co. (C. C.) 100 Fed. 910; Cosmopolitan M. Co. v. Foote (C. C.) 101 Fed. 518; Bunker Hill & Sullivan M. & C. Co. v. Empire State-Idaho M. & D. Co., 109 Fed. 538, 48 C. C. A. 665.

It is further and strenuously urged on behalf of the appellants that the appellee, in following the vein underground between vertical planes drawn downward through its adjudicated end lines, does so more upon its strike than upon its dip; and this, it is insisted, is not permissible under the law.   In respect to this matter the master made no findings, holding it immaterial, as did the court below, and confining his finding in that regard to the fact that the course of the vein was downward between the end line planes fixed by him.   The extralateral right to a vein or lode outcropping at the surface, where it exists, is fixed by the course of the vein or lode at the surface, and not by its course on a level. "We do not mean to say that a vein must necessarily crop out upon the surface, in order that locations may be properly laid upon it," said the Supreme Court in Mining Co. v. Tarbet, 98 U. S. 469, 25 L. Ed. 253. "If it lies entirely beneath the surface, and the course of its apex can be ascertained by sinking shafts at different points, such shafts may be adopted as indicating the position and course of the vein; and locations may be properly made on the surface above it, so as to secure a right to the vein beneath.   But where the vein does crop out along the surface, or is so slightly covered by foreign matter that the course of its apex can be ascertained by ordinary surface exploration, we think that the act of Congress requires that this course should be substantially followed in laying claims and locations upon it.   Perhaps the law is not so perfect in this regard as it might be; perhaps the true course of a vein should correspond with its strike, or the line of a level run through it; but this can rarely be ascertained until considerable work has been done, and after claims and locations have become fixed.   The most practicable rule is to regard the course of the vein as that which is indicated by surface outcrop, or surface explorations and workings.   It is on this line that claims will naturally be laid, whatever be the character of the surface, whether level or inclined."   In the subsequent case of Iron Silver Mining Co. v. Elgin Mining Co., 118 U. S. 196, 206, 6 Sup. Ct. 1177, 30 L. Ed. 98, the same court, after quoting section 2322 of the Revised Statutes [U. S. Comp. St. 1901, p. 1426], said:

"This section appears sufficiently clear on its face.   There is no patent or latent ambiguity in it.   The locators have the exclusive right of possession and enjoyment of 'all the surface included within the lines of their locations'; and the location, by another section, must be distinctly marked on the ground, so that its boundaries can be readily traced.   Rev. St. § 2324.   They have also the exclusive right of possession and enjoyment of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of said surface locations.'   The surface side lines extended downward vertically determine the extent of the claim, except when in its descent the vein passes outside of them, and the outside portions are to lie between vertical planes drawn downward through the end lines.   This means the end lines of the surface location, for all locations are measured on the surface.   The difficulty arising from the section grows out of its application to claims where the course of the vein is so variant from a straight line that the end lines of the surface location are not parallel, or, if so, are not at a right angle to the course of the vein. This difficulty must often occur where the lines of the surface location are made to control the direction of the vertical planes.   The remedy must be found, until the statute is changed, in carefully making the location, and in

postponing the marking of its boundaries until explorations can be made to ascertain, as near as possible, the course and direction of the vein. In Colorado the statute allows for this purpose sixty days after notice of the discovery of the lode. Then the location must be distinctly marked on the ground, and thirty days thereafter are given for the preparation of the proper certificate of location to be recorded. Erhardt v. Boaro, 113 U. S. 527, 533, 5 Sup. Ct. 560, 28 L. Ed. 1113. Even then, with all the care possible, the end lines marked on the surface will often vary greatly from a right angle to the true course of the vein. But, whatever inconvenience or hardship may thus happen, it is better that the boundary planes should be definitely determined by the lines of the surface location, than that they should be subject to perpetual readjustment according to subterranean developments made by mine workings. Such readjustment at every discovery of a change in the course of the vein would create great uncertainty in titles to mining claims. The rule, whatever hardship it may work in particular cases, should be settled, and thus prevent, as far as practicable, such uncertainty. * * * The provision of the statute that the locator is entitled throughout their entire depth to all the veins, lodes, or ledges, the top or apex of which lies inside of the surface lines of his location, tends strongly to show that the end lines marked on the ground must control. It often happens that the top or apex of more than one vein lies within such surface lines, and the veins may have different courses and dips, yet his right to follow them outside of the side lines of the location must be bounded by planes drawn vertically through the same end lines. The planes of the end lines cannot be drawn at a right angle to the courses of all the veins if they are not identical."

While the statute requires parallelism of the end lines, and the courts have held that they may not be laid so divergent as to include more in length upon the dip of the vein than is allowed in length upon the surface, neither the statute nor any decision to which our attention has been called defines any particular angle at which the end lines shall cross the general course of the vein in order that the extralateral right given by the statute may exist. And as said by the Supreme Court in the case last cited, where more than one vein apexes within the surface lines, it would be a physical impossibility for the end lines to be drawn at a right angle to the courses of all such veins. And that the extralateral right conferred by the statute may and does exist without regard to the angle at which the end lines cross the general course of the vein has been held both by the Supreme Court and by this court. Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 15 Sup. Ct. 733, 39 L. Ed. 859; Empire State-Idaho M. & D. Co. v. Bunker Hill & Sullivan M. & C. Co., 114 Fed. 417, 52 C. C. A. 219, in which last-named case this court awarded the appellant Empire State-Idaho Mining & Developing Company the right to follow the vein outcropping within the surface boundaries of its San Carlos location between planes drawn down through its end lines at almost, if not quite, as much an angle to the general course of the outcrop of the vein within its surface boundaries as is the angle at which the appellee herein was permitted by the court below to pursue the segment of the vein here in question.

The judgment is affirmed.